UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

STEPHEN GRECO,

           Plaintiff,

           v.

LOCAL.COM CORPORATION and HEARST
COMMUNICATIONS, INC.,

           Defendants.

**OPINION**
**& ORDER**

09 Civ. 2016 (LBS)

SAND, J.

      Plaintiff Stephen Greco, a common stock shareholder of nominal Defendant Local.com Corporation ("Local.com"), brings this derivative action alleging that Defendant Hearst Communications, Inc. ("Hearst") purchased securities of Local.com in violation of section 16(b) of the Securities Exchange Act of 1934 ("section 16(b)"). Hearst now moves for leave to amend its answer to assert the affirmative defenses of *res judicata* and collateral estoppel, and for summary judgment dismissing Plaintiff's Complaint based on these defenses. This Court has jurisdiction pursuant to 15 U.S.C. § 78aa.

      For the reasons stated below, Hearst's motion is granted.

**I.     Background**

      **a.  The Disputed Transactions**

      The following facts are not in dispute. On February 22, 2007, Hearst obtained from Local.com convertible notes and two series of warrants to purchase Local.com's common stock. Mansfield Decl. Ex. C, Local.com Form 8-K, Jul. 31, 2007 ("Form 8-

K"), at 4.  The parties agreed that Local.com could not issue additional securities for ninety days following the transaction.  Mansfield Decl. Ex. D, Consent to Equity Sales, at ¶ C.  Subsequent to that agreement, Local.com determined that it wished to acquire new financing before the conclusion of the ninety day period.  Meanwhile, between July 19 and 25, 2007, Hearst converted its notes and sold some of its Local.com stock.  As long as Hearst retained an ownership interest in Local.com greater than 10% of its outstanding shares, it was subject to the prohibition on reaping short-swing profits contained in section 16(b).  *See* 15 U.S.C. §§ 78p(a)(1), (b) (requiring that beneficial owners of more than 10 percent of securities yield to issuer any profit realized by any purchase and sale, or sale and purchase, within six months of each other).

On July 31, 2007, Hearst and Local.com entered into a Consent to Equity Sales agreement, where Hearst agreed to waive the ninety-day prohibition on Local.com issuing additional securities, and Local.com agreed to reduce the exercise price of Hearst's warrants by fifty cents ($0.50) per share.  Mansfield Decl. Ex. D, Consent to Equity Sales, at ¶ C.   The agreement was conditioned on Local.com filing a Form 8-K outlining the terms of the transaction before 5:00 p.m. on August 1, 2007.  *Id.* at ¶ 2.  Also on July 31, 2007, Local.com entered into a Securities Purchase Agreement ("SPA") with third-party investors not related to this case, outlining the issuance of 2,356,900 shares of its common stock.  Mansfield Decl. Ex. E, SPA, at ¶ B.  When these new shares became outstanding securities, they would dilute Hearst's holdings in Local.com to less than 10% of the latter's outstanding shares and thereby exempt it from coverage under section 16(b).  On August 1, 2007 at 4:06 p.m., the third party investors rendered

payment to Local.com for the new shares.  Mansfield Decl. Ex. F, Norman Dep., at 65:8-13.

      **b.  *Donoghue v. Local.com***

      On October 2, 2007, Deborah Donoghue, an investor in Local.com, brought a derivative action against Hearst alleging that the latter violated section 16(b).  Specifically, Donoghue alleged that the fifty-cents-per-share discount contained in the Consent to Equity Sales agreement signed by Hearst and Local.com on July 31, 2007 resulted in a "deemed purchase" of all the shares underlying Hearst's warrants on Local.com's stock.  Mansfield Decl. Ex. A, Donoghue Orig. Compl. ¶ 15.  These purchases, coming after Hearst's sales of Local.com stock between July 10 and 25, 2007, allegedly yielded short-swing profits that Hearst was obligated to remit to Local.com under section 16(b).  *Id.* at ¶ 19.  Donoghue filed an Amended Complaint on December 3, 2007, bringing different allegations.  Donoghue claimed that the discount on the warrants contained in the Consent to Equity Sales agreement became "irrevocably binding" when Local.com filed its Form 8-K at 4:32 p.m. on August 1, 2007.  Mansfield Decl. Ex. B, Donoghue Amended Compl. ¶ 14.  Given that the new shares for the third party investors—reducing Hearst's share of Local.com to below the ten percent threshold for section 16(b) liability—were not issued until August 1 at 4:45 p.m., Donoghue's amended complaint claimed that Hearst violated section 16(b) for thirteen minutes between the filing of the Form 8-K and the issuance of the securities to the third-party investors.  On February 11, 2008, Hearst moved for a judgment on the pleadings, arguing that the new shares were owned by the third parties prior to the filing of the Form 8-K, and that therefore Hearst owned less than ten percent of Local.com at the time the Form

8-K was filed.  On June 26, 2008, with the parties' agreement, this Court converted Hearst's motion for judgment on the pleadings to a motion for summary judgment.

On February 3, 2009, this Court granted Hearst's motion for summary judgment, concluding that the third parties' ownership of the new securities was vested when it paid full consideration to Local.com at 4:06 p.m.  Therefore, Hearst was not covered by section 16(b) when Local.com filed its Form 8-K at 4:32 p.m., and was not liable for the alleged deemed purchase which took place at that time.  *Donoghue v. Local.com*, No. 07 Civ. 8550 (LBS), 2009 WL 260797 (S.D.N.Y. Feb. 3, 2009).  Donoghue appealed, and in a summary order handed down on December 9, 2009, the United States Court of Appeals for the Second Circuit affirmed this Court's grant of summary judgment.  *Donoghue v. Local.com*, 355 Fed. Appx. 520 (2d Cir. 2009).

### c.  Procedural History of the Instant Case

On April 8, 2008, Plaintiff filed the instant section 16(b) derivative action in the United States District Court for the Central District of California.  No. SACV08-374 AG.  The Complaint tracks the factual allegations of Donoghue's original complaint, claiming that Hearst re-purchased its stock in Local.com when the Consent to Equity Sales agreement was signed on July 31, 2007.  On July 16, 2008, Hearst filed a motion to transfer the action to this Court.  Plaintiff opposed the motion, and filed a motion for summary judgment on October 6, 2008.  On November 3, 2008, Hearst amended its answer to include affirmative defenses based on *res judicata*.  On December 8, 2008, the Central District of California declined to decide Plaintiff's summary judgment motion, and transferred this action to this Court.  Hearst filed the instant motion for leave to amend its answer and for summary judgment on October 21, 2010, raising the affirmative

4

defense of *res judicata*.  On November 19, 2010, Plaintiff filed its own motion for summary judgment, asserting that no genuine material facts contravened the conclusion that Hearst violated section 16(b).  On December 29, 2010, this Court ordered that proceedings on Plaintiff's motion be stayed, pending its decision on this motion.

## II.    Discussion

### a.  Standard of Review

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that might affect the outcome of a suit under governing law.  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003).  A "genuine" issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although *res judicata* is an affirmative defense that should be raised in the defendant's answer, the district court has the discretion to entertain the defense when it is raised in a motion for summary judgment, by construing the motion as one to amend the defendant's answer."  *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000).  Leave to amend a complaint is granted at the court's discretion and "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  If the proposed amendments are futile, and would not survive a motion to dismiss, courts will deny leave to amend.  *Foman v. Davis,* 371 U.S. 178 (1962); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

### b.  Applicability of *Res Judicata*

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "To prove the affirmative defense" of *res judicata* "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Monahan*, 214 F.3d at 285.  Plaintiff does not contest the first and third prongs of this test.  As for the second, "[i]t is well settled in this circuit that literal privity is not a requirement for *res judicata* to apply."  *Id.* at 285.  Instead, "one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, even though the first party was not formally a party to the litigation."  *Alpert's Newspaper Delivery Inc. v. N.Y. Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989).

Hearst contends that this action is barred by the doctrine of *res judicata.* Specifically, it argues that Plaintiff's Complaint is premised on claims that were actually litigated or could have been raised in *Donoghue v. Local.com*, which was decided on the merits in favor of Hearst.  It contends that Plaintiff and Donoghue are in privity because they are both section 16(b) derivative plaintiffs, bringing actions based on the same transactions on behalf of the same real party in interest, Local.com.  As a result, Hearst contends, the finding in *Donoghue* that Hearst's deemed purchase of Local.com stock took place at 4:32 p.m. on August 1, 2007 is *res judicata* with respect to Plaintiff's Complaint.  Because this Court in *Donoghue* also found that the third-party stock vested

6

at 4:06 p.m. that same day, Hearst argues that its purchase took place after the third-party transaction lowered Hearst's ownership share of Local.com beneath the 10% threshold for section 16(b) liability.

Plaintiff argues that he is not in privity with the plaintiff in *Donoghue*. Citing the Second Circuit in *Papilsky v. Berndt*, he contends that for *res judicata* to bind nonparty stockholders in a derivative action, "fundamental considerations of fairness and justice demand that the representation be adequate." 466 F.2d 251, 260 (2d Cir. 1972). Plaintiff claims that Donoghue's representation of the non-party shareholders and Local.com was grossly inadequate because she abandoned the alleged date of July 31, 2007 for Hearst's deemed purchase, substituting August 1, 2007. Therefore, Plaintiff contends, the finding of the latter date in *Donoghue* is not *res judicata* with respect to the present action, and he is free to argue that Hearst's deemed purchase took place when it entered into the Consent to Equity Sales agreement and SPA on July 31, 2007, before the third-party stock vested at 4:06 p.m. on August 1, 2007. Plaintiff's arguments are meritless.

"One of the principal criteria for adequacy of representation is that the representation must be of such character as to insure the vigorous prosecution of the claim." *Papilsky*, 466 F.2d at 260. The key issue here is whether Donoghue's substitution of August 1, 2007 for July 31, 2007 as the date of Hearst's deemed purchase constitutes inadequate representation of Local.com and its stockholders. In the sole reported case in this District ruling on a *res judicata* claim in a section 16(b) action, the court turned back a plaintiff's attempt to "put in issue facts not disputed" by a different plaintiff in an earlier action, holding that "the finality of a judgment does not depend upon the approval by the plaintiff in a subsequent suit of the conduct of the litigation by

counsel in the earlier action." *Teton v. Bryon*, No. 131-280, Fed. Sec. L. Rep. (CCH) ¶ 90,988 (S.D.N.Y. Oct. 31, 1960) (citing *Ratner v. Paramount Pictures*, 6 F.R.D. 618 (S.D.N.Y. 1942)). *Teton* is a close analogue to the instant case; in both, a second plaintiff attempted to put at issue facts that were assumed by the first plaintiff. The court's holding indicates that such disagreements over litigation strategy are insufficient to find inadequacy of representation.

In other types of shareholder derivative suits under Fed. R. Civ. P. 23.1,[1] courts faced with a claim of inadequate representation "focus on the vigor with which the representative will prosecute the corporate claim and the community of interest between the plaintiff and the proposed stockholder class." *Shamrock Assocs. v. Horizon Corp.*, 632 F. Supp. 566, 570 (S.D.N.Y. 1986). Under both inquiries, the "appropriate question" is not whether the plaintiffs simply differ over strategy; it is "whether those interests which set the plaintiffs apart from the other shareholders will tend to cause them to disregard their interests." *Bolton v. Gramlich*, 540 F. Supp. 822, 835 (S.D.N.Y. 1982). Thus, courts find a failure of vigorous prosecution where a plaintiff fails in his basic duties in litigating the action, disregarding the interests of nonparty stockholders. In *Papilsky*, a case cited by Plaintiff, the Second Circuit noted that a plaintiff's "failure to

---

[1] Fed. R. Civ. P. 23.1(a) states that a derivative action may not be maintained if the plaintiff "does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Defendant argues that the adequacy requirements of Rule 23.1 do not apply to section 16(b) suits because in the latter, plaintiffs are only nominal and there is no defense based on their inadequacy. Defendant is correct that adequacy concerns involving actual plaintiffs, rather than their counsel, do not apply here. However, in the rest of its briefing, Defendant does not dispute that the privity required for *res judicata* contains a general requirement for adequacy of representation, a requirement describing the performance of counsel as well as supervision by a named plaintiff. Therefore, although this Court does "not suggest that cases decided under Rule 23.1 are directly applicable to a § 16(b) action," this Court follows other courts in finding Rule 23.1 actions analogous to section 16(b) actions because the latter "are structurally derivative in nature." *Portnoy v. Kawecki Berylco Indus., Inc.*, 607 F.2d 765, 767 n.3 (7th Cir. 1979); *see also Rothenburg v. United Brands Co.*, No. 74 Civ. 5735 (CLB), 1977 WL 1014 (S.D.N.Y. May 11, 1977) (finding that continuous ownership requirement implied in Rule 23.1 also applies to section 16(b)), *aff'd mem.*, 573 F.2d 1295 (2d Cir. 1977); *Abbe v. Goss*, 411 F. Supp. 923 (S.D.N.Y. 1975) (applying Rule 23.1 demand requirement to section 16(b) action).

answer interrogatories" raised "some doubt" as to the adequacy of his representation. 466 F.2d at 260. "A contest upon the merits," on the other hand, "is presumed to indicate that the plaintiff-stockholder vigorously prosecuted the claim on behalf of the corporation." *Id.* at 258. In short, the inquiry into inadequacy of representation in derivative suits—whether based on an antagonism of interests or a failure to prosecute— tests the identity of interests between the plaintiff and stockholders not participating in the litigation.[2]

The same principle holds in cases applying the adequacy of representation prong of the privity requirement for *res judicata*. The Second Circuit has held that for purposes of claim preclusion, "the requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). In *Monahan*, another case cited by Plaintiff, the Second Circuit stated that the plaintiffs "misconceive the *res judicata* inquiry" by asking the court "to reevaluate the merits of the first action in order to assess the adequacy of their representation." 214 F.3d at 286. "Absent evidence of collusion" between the plaintiff and defendant in the earlier case, the court declined to find inadequacy of representation. *Id.* at 288.

---

[2] Other cases include *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 753 (S.D.N.Y. 2004) (conclusory allegations of conflict insufficient to disqualify derivative plaintiff where plaintiff had "vigorously prosecuted" corporation's interests); *Schneider v. Austin*, 94 F.R.D. 44, 46 (S.D.N.Y. 1982) ("If plaintiff demonstrates a desire to pursue conscientiously the corporation's action, and engages competent counsel to do so, the adequate representation requirement is met unless there exists between plaintiff and the other shareholders antagonism or some conflict of interest threatening to weaken the forcefulness of the prosecution."); *Cohen v. Bloch*, 507 F. Supp. 321, 324 (S.D.N.Y. 1980) (derivative plaintiff inadequate where counsel represented family members in multiple derivative actions); *Sweet v. Bermingham*, 65 F.R.D. 551 (S.D.N.Y. 1975) (defendant failed to show material conflict of interest where derivative plaintiff was wife of partner in law firm representing her). *See also Colan v. Monumental Corp.*, 425 F. Supp. 1023, 1026 (N.D. Ill. 1981) (denying application of *res judicata* to section 16(b) action where counsel in earlier case filed affidavit "admitting that he had no case and inviting the Court to act accordingly").

Here, Plaintiff has not alleged any conflict of interest between himself and Donoghue, and relies entirely upon the contention that her abandonment of July 31, 2007 as Hearst's purchase date constitutes failure to vigorously prosecute her claim.  As discussed *supra*, the pursuit of an unsuccessful legal theory or strategy does not constitute failure to vigorously prosecute a section 16(b) derivative action.  Here, Donoghue's counsel vigorously prosecuted her claim on behalf of Local.com throughout the litigation, moving to convert Hearst's motion for judgment on the pleadings into a motion for summary judgment, making submissions on both stages of the motion, filing an appeal from this Court's grant of summary judgment in favor of Hearst, and arguing the appeal before the Second Circuit.

Moreover, Donoghue attempted to reassert the July 31, 2007 date after Hearst filed a motion to dismiss; she submitted a letter to this Court on June 17, 2008, outlining the evidence for the July 31 date.  Albert Decl. Ex. C.  On July 30, 2008, Hearst submitted its memorandum of law in support of summary judgment, arguing *inter alia* that Donoghue's new advocacy for the July 31, 2007 date was not based on new facts, that she should be bound by her complaint, and that even if she were allowed to plead that date, Hearst would have an effective rebuttal argument on the merits.  Albert Decl. Ex. B.  In the face of these arguments, Donoghue decided not to pursue the July 31 date before this Court.  Albert Decl. Ex. D.  Plaintiff portrays this as an "inept" failure to pursue the litigation, Pl. Mem. Opp. Mot. Summ. J. at 12, but the record shows that having argued this issue, Donoghue made a strategic decision to focus the case on a different issue: when the third-party shares vested, diluting Hearst's ownership stake in Local.com and exempting it from section 16(b).  On appeal, Donoghue once again argued

for July 31 as the purchase date.  Mansfield Decl. Ex. I, Transcript of Second Circuit Oral Arg. Dec. 9, 2009, at 21:4–10.  Donoghue's loss on the merits does not show that her representation was inadequate; it only shows that she chose the wrong strategy.

Plaintiff contends that the July 31, 2007 date for Hearst's purchases is "the correct legal theory," Pl. Mem. Opp. Mot. Summ. J. at 6, and Donoghue's abandonment of it is therefore so unjustifiable that it shows she was not adequately representing Plaintiff's and Local.com's interests.  In support, Plaintiff cites testimony from Local.com's Chief Financial Officer Douglas Norman that the Consent to Equity Sales agreement was effective the day it was signed, July 31.  Albert Decl. Ex. F, Norman Dep. 13:25–14:5.  However, the case for the July 31 date is not as clear-cut as Plaintiff claims.  As counsel for Donoghue conceded in his June 17, 2008 letter, Norman only testified to his belief regarding the meaning of the Consent to Equity Sales agreement; its actual meaning was "a matter of contract interpretation for the court."  Albert Decl. Ex. C at 3.  The argument for July 31 as the purchase date depends on the assumption that the Consent to Equity Sales agreement became effective when it was signed.  Such a theory would necessarily imply that the SPA was also effective when it was signed.  Because both documents were signed on the same day, making it unclear whether section 16(b) applied to Hearst, the adoption of July 31 as the purchase date would not have automatically resulted in Hearst's liability.  In short, Donoghue's choice of August 1 rather than July 31 as Hearst's purchase date was neither contrary to the evidence nor so irrational as to raise a claim of inadequate representation.

Plaintiff also argues that the adequacy of Donoghue's representation is a question of fact inappropriate for summary judgment.  Such a finding would contravene the

Second Circuit's holding that a district court can entertain a *res judicata* defense at summary judgment, provided it has the relevant data or legal records, or is in the same district where the original action was filed.  *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (citing *Carbonell v. Louisiana Dep't of Health & Human Res.*, 772 F.2d 185, 189 (5th Cir. 1985)); *see also Monahan*, 214 F.3d at 283.  Here, *Donoghue* was filed in this Court, which has all the records from that litigation.

In a similar vein, Plaintiff contends that his claim, alleging July 31, 2007 as Hearst's purchase date, will necessarily involve different evidence from that presented in *Donoghue*, and that therefore *res judicata* is inappropriate.  However, the record in the instant case contains all the relevant contracts, regulatory filings, and deposition testimony, and Plaintiff fails to mention what different evidence it needs.  In any event, even if Plaintiff identified newly discovered evidence or evidence that it planned to obtain, "newly discovered evidence does not preclude the application of *res judicata*." *Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991).  Exceptions exist for fraudulently concealed evidence or evidence that could not have been discovered through due diligence, *id.*, but neither describes this case.

Finally, the Court notes that Plaintiff had actual notice of the *Donoghue* action. His Complaint tracks the allegations of Donoghue's original complaint, and alleges demand futility because of the demand made by Donoghue regarding "the same wrongdoing alleged in this action."  Compl. ¶ 9.  Plaintiff filed his Complaint on April 8, 2008, after Donoghue amended her complaint to allege a purchase date of August 1, 2007, and almost ten months before this Court granted summary judgment in *Donoghue*. Afterward, Plaintiff followed the *Donoghue* case closely, attending the oral argument

12

before the Second Circuit.  Mansfield Decl. ¶ 14.  Plaintiff could have addressed his

concerns over Donoghue's supposedly inadequate representation by filing a motion to

intervene in *Donoghue* pursuant to Fed. R. Civ. P. Rule 24.  *See, e.g.*, *Molybdenum Corp.

of Am. v. Int'l Min. Corp.*, 32 F.R.D. 415 (S.D.N.Y. 1963) (allowing intervention in

section 16(b) action).  Instead, Plaintiff did nothing to prosecute this action until

September 2010, nine months after the Second Circuit ruled in *Donoghue* and sixteen

months after the instant case was transferred to this Court.

Having failed to intervene in *Donoghue*, Plaintiff cannot now relitigate the issues

and findings of that case.  A denial of *res judicata* would not only subject Hearst to

duplicate litigation, but also needlessly duplicate litigation conducted in this Court and

the Second Circuit.  Such an outcome would violate the underlying purposes of *res

judicata*: "protecting litigants from the burden of relitigating an identical issue with the

same party or his privy and . . . promoting judicial economy by preventing needless

litigation."  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979).

Accordingly, this Court's findings in *Donoghue*, in particular the date of July 31,

2007 for Hearst's deemed purchase of Local.com's stock, are *res judicata* with respect to

the instant action, barring Plaintiff's claims.[3]

### c.  The Parties' Remaining Claims

Hearst argues that collateral estoppel also bars Plaintiff's action.  Having ruled on

Hearst's motion on the grounds of *res judicata*, the Court does not reach this claim.

---

[3] Plaintiff further contends that since Hearst vehemently opposed this Court's consideration of July 31 as
the correct purchase date in *Donoghue*, applying *res judicata* would be unjust to Plaintiff and Local.com.
Plaintiff cites no authority for this untenable proposition, and the Court rejects it.  The Court has considered
all of Plaintiff's remaining arguments and found them to be without merit.

Plaintiff offers no reason to reject Defendant's motion to amend its answer to include the defenses of *res judicata* and collateral estoppel.  This motion is granted.

## III.    Conclusion

For the foregoing reasons, Defendant's motion for leave to amend its answer and for summary judgment is granted.  Plaintiff's pending motion for summary judgment is denied as moot.


SO ORDERED.


Dated: January 18, 2011
       New York, NY


_____
                 U.S.D.J.